# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| United States of America | ) |
| :--- | :--- |
| v. | ) |
|  | ) Case No. 2:19-MJ 0119 — DB |
| Julius Rucks | ) |
|  | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **December 2018 through July 2019** in **Butte County and Yuba County** in the **Eastern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
| :--- | :--- |
| 21 U.S.C. § 841(a)(1) | Manufacture and Distribution of Fentanyl |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

*Complainant's signature*

Brian Nehring, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-29-19

*Judge's signature*

City and state:

Deborah Barnes, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Brian Nehring of the DEA, being duly sworn, depose and state as follows:

## Purpose

1. This Affidavit is made in support of a Criminal Complaint and Arrest Warrant charging Julius RUCKS, with manufacturing and distribution of a mixture and substance containing Fentanyl, a Schedule II Controlled Substance, in violation of Title 21 § U.S.C. 841(a)(1).

## Agent Background

2. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division, and have been so employed since 1991. I have had numerous assignments since beginning with DEA, including being assigned to the Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004. I have been assigned to the Sacramento Division Office since September of 2004.

3. I have received specialized training in narcotic investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the Drug Enforcement Administration (DEA). In addition, I graduated from the DEA Basic Agents Academy at the FBI Academy at Quantico, Virginia. In total, I have received in excess of 500 hours of comprehensive formalized classroom instruction in those areas outlined above.

4. I have assisted in the execution of more than four hundred (400) warrants to search particular places or premises for controlled substances and/or related paraphernalia, indicia and other evidence of violations of federal drug narcotics statutes. As a result, I have encountered and become familiar with various tools, methods, trends, and paraphernalia and related articles utilized by traffickers in their efforts to import, conceal, manufacture and distribute controlled substances. Central to all trafficking efforts, regardless of the drug, is the traffickers' effort to make a profit from those dealings or transactions, either for the purchase of additional substances or material gain. I have been actively involved as case agent in excess of two hundred (200) investigations and have talked with confidential informants involved in the trafficking of narcotics, and this has formed the basis of my opinions.

1

5. I have been qualified as and have testified as an expert witness in both federal and state court in the Northern and Eastern Districts of California and in counties including Alameda, Contra Costa, Solano, Sacramento and others. These areas of qualification have included possession for sale, possession with intent to distribute, manufacturing of a controlled substance and cultivation.

## Statement of Probable Cause

6. In late 2018, I initiated an investigation of the heroin and fentanyl trafficking activities of Julius RUCKS after receiving information from a Confidential Source, hereinafter referred to as the CS. The CS is currently and has in the past provided information and assistance solely in hopes of receiving financial compensation and has not had any pending criminal charges during the entire time that he/she has cooperated with law enforcement. The CS has a criminal history confined to one violent felony conviction many years ago and a prison commitment and has never been arrested for making a false statement or perjury. The CS has provided information and assistance in the past in prior and current investigations, which has been verified through multiple public database inquiries, through information received from other confidential sources, and through arrests and subsequent seizures. The CS has never been found to be false or misleading, and the CS's information has previously been incorporated in prior federal affidavits. The CS's information regarding narcotics and narcotics trafficking is entirely consistent with my own training and experience in this area. For these reasons, I consider the CS reliable.

7. The CS related that he/she knew an individual in the Oroville, California area subsequently identified by the CS from DMV driver's license photograph as Julius RUCKS. The CS related that he/she had known RUCKS for over a year and that during this time, RUCKS had been involved in selling marijuana and heroin, which he had on more than one occasion displayed to the CS. The CS provided two telephone number for RUCKS, which the CS said Rucks used to conduct drug distribution activities. Inquiries with Verizon revealed that both these numbers were subscribed to Julius RUCKS at 425 Nelson Avenue, Oroville, California.

8. Subsequent inquiries with the National Criminal Intelligence Center (NCIC) revealed that RUCKS has an extensive criminal history, including multiple felony convictions in the State of California and subsequent prison commitments. I learned through inquiries with NCIC that RUCKS's criminal history includes, but is not limited to, felony convictions for Making/Passing Fictitious Checks (2003); Possession of a Controlled Substance (Two Counts in 2009); and Possession of Cocaine Base for Sale (2010), resulting in a 4 year prison commitment.

9. RUCKS began telling the CS that he was distributing counterfeit 30mg Oxycodone tablets containing both fentanyl and heroin. RUCKS claimed that was he was receiving these tablets from a source who was manufacturing these tablets using a pill press and that he would supply the manufacturer with large amounts of heroin and fentanyl, which this person would use to manufacture and press the counterfeit tablets. RUCKS told the CS that his source for the tablets was manufacturing multiple 1000-count quantities of tablets at a time.

10. On December 6, 2018, I monitored several calls between the CS and RUCKS, during which RUCKS agreed to deliver approximately 250 of the alleged fentanyl pills for $3500. RUCKS agreed to meet the CS in the area of CVS shopping center, in the area of E street, Marysville, California to conduct this narcotics transaction. I subsequently searched the CS for contraband with negative results, provided the CS with an amount of official government funds to conduct the transaction with RUCKS and outfitted the CS with a concealed transmitter which allowed the transaction to be monitored.

11. At the agreed upon time, Special Agent Maxim Lashchuk observed RUCKS arrive in a black Lincoln four door sedan, California license plate 6JJF887 (found to be registered to RUCKS at 425 Nelson Avenue, #6, Oroville, California per California Department of Motor Vehicles records) into the parking lot of CVS. Moments later, the CS walked directly from my vehicle to meet with RUCKS in the black Lincoln. The CS and RUCKS were monitored conducting the transaction for the suspected fentanyl tablets in exchange for the government funds. After this transaction, the CS exited RUCKS vehicle and walked directly back to my vehicle where he/she turned over the pills which had a gross weight with packaging of 66 grams. RUCKS departed shortly thereafter.

12. I was subsequently informed by the DEA Western Regional Laboratory that the blue tablets sold by RUCKS on 12-06-2018 were analyzed as containing fentanyl.

13. Prior to the providing the CS with the money to purchase the above described fentanyl tablets from RUCKS on December 6, 2018, I had written an undercover telephone number on a piece of paper along with a name and "$15?" and placed it inside the money which the CS had subsequently given to RUCKS. I did this as it has been my experience that drug dealers often attempt to "go around" their immediate source to the ultimate source by doing just such an action. RUCKS discovered this note and on the following day (December 7, 2018) RUCKS sent a text message to me: "$14" from his telephone. He subsequently initiated direct contact with me and told me that I did not have to go through the CS anymore to obtain any of these tablets and not to tell the CS that we were in direct communication.

14. I subsequently engaged in recorded calls and texts with RUCKS in the days leading up to January 10, 2019, and arranged to purchase approximately 350 tablets from him for $5000. I agreed to meet RUCKS in Marysville, California at a shopping center at the intersection of Highway 20 and Highway 70. RUCKS subsequently arrived in his black Lincoln sedan, which I entered. RUCKS provided me with the tablets which I verified were blue and bore the markings RUCKS had previously quoted ("V" and "4812"), which correspond with commercially manufactured and available Oxycodone tablets. RUCKS indicated that the pills were selling very well and were of as good quality as the last batch. RUCKS stated that in order to get a price of $10 per pill, I would have to buy 2000 pills. I told RUCKS I would probably be willing to get 500 at a time in the future. RUCKS stated that he would drop the price to $13 per pill for 500 and that prices would go down for a 1000 and up.

15. I was subsequently informed by the DEA Western Regional Laboratory that the blue tablets sold by RUCKS on January 10, 2019 were analyzed as being 361 tablets weighing 29 grams and contained fentanyl.

16. I continued to engage in recorded calls and texts with RUCKS and arranged to purchase approximately 400 fentanyl tablets from RUCKS on April 3, 2019 for $5000.00 at the Folsom Outlets Shopping Center in Folsom, California. On that day, agents observed RUCKS exit his residence at 425 Nelson Avenue, #6, Oroville, California and depart in his black Lincoln and travel to the Folsom Outlets where he met me near the McDonalds Restaurant in this parking lot. RUCKS entered my vehicle and provided me with the tablets which he indicated some of the same V/4812 imprint tablets as well as some tablets bearing the imprint "K/9," which also correspond with commercially manufactured and available Oxycodone tablets. I paid RUCKS the agreed $5000, and RUCKS indicated he threw in some extra pills. We discussed larger transactions in the future.

17. I was subsequently informed by the DEA Western Regional Laboratory that the blue tablets sold by RUCKS on April 4, 2019 were analyzed as being 415 tablets weighing approximately 40 grams and contained fentanyl.

18. On July 23, 2019, I spoke with Butte County Sheriff's Department Detective Sergeant James Beller. Detective Beller related to me that prior to that day, he had obtained a state arrest warrant for RUCKS in Butte County for having distributed counterfeit currency on an occasion in 2018. On July 23, 2019, Detective Beller traveled to RUCKS's residence at 425 Nelson Avenue, #6, Oroville, California and attempted to contact RUCKS to place him under arrest. RUCKS answered through the door when Detectives identified themselves but RUCKS did not immediately open the door and

appeared to move back and forth throughout the residence and took a very long time to finally open the front door. When he finally did answer the door, he was very nervous and was sweating profusely. Officers took RUCKS into custody in the front room of the two-room apartment residence and performed a protective sweep of the residence to determine if anyone else was present or if RUCKS had attempted to dispose of a firearm or contraband based upon his extremely long delay in opening the door, his demeanor, etc. During this protective sweep, Detective Beller observed pistol ammunition in plain sight as well as what he believed to possibly be a pill tableting press on the floor of the residence. Detective Beller and the other officers exited the residence with RUCKS and secured the front door and waited outside as Detective Beller applied for and received a Butte County search warrant for the residence.

19. Butte County Sheriff's Department Detectives contacted the DEA for assistance with the potential tableting operation. At that time, I spoke with Detective Beller and informed him of the ongoing investigation of RUCKS's fentanyl tablet distribution activities. I responded to 425 Nelson Avenue, Oroville, California. After Detective Beller arrived with the signed search warrant, I entered the residence in full hazmat gear using a Self-Contained-Breathing-Apparatus (SCBA) due to the hazardous nature of these operations. I located a large electric motor-driven pill tableting press and accompanying pill die and punches in the first room in the residence. I located numerous pills on the floor in front of this pill press bearing the V/4218 imprint identical to the tablets RUCKS previously sold me, pill and tablet dies that corresponded to these tablets, as well as a bowl containing blue-green powder that matched the color of these pills. During a continued search of the residence I located additional items consistent with the manufacture and distribution of clandestine counterfeit tablets, to include large amounts of commercial labeled pill binder material (Microcrystalline Cellulose, Stearic Acid, Lactose, Firmapress), commercial labeled blue powder dye, grinders and mixers, additional amounts of white powder in knotted clear plastic bags and gallon size bags, and handwritten notes discussing types of pill dies.

20. During a search of the bedroom in the residence, I located indicia in the name of RUCKS throughout. On the shelf in the open closet in this room I observed boxes of Winchester 9mm Pistol Ammunition, digital scales and a black Sentry Safe which was locked. I forced this safe open, and inside I located a .357 Smith and Wesson Revolver and a box of .357 pistol ammunition; a Smith and Wesson 9mm semi-automatic pistol with the serial number scratched off and an accompanying ammunition magazine loaded with 9mm ammunition; and a Rock Island Armory .45

caliber semi-automatic pistol with no serial number and an accompanying ammunition magazine loaded with .45 caliber ammunition.

21. I traveled to the Butte County Sheriff's Department and spoke with RUCKS, who was in custody in an interview room. I read RUCKS his *Miranda* Rights, of which he acknowledged his understanding. RUCKS admitted that he had sold me the above described tablets but claimed that he did not know that they contained fentanyl but had believed that they had contained heroin. RUCKS stated that over the last year, he was obtaining the pills from someone else, and that he decided only recently to start manufacturing the pills himself. RUCKS stated that the pills at his residence contained heroin to his knowledge as he had recently obtained heroin specifically for this purpose. He said he was no longer obtaining pills from the person who provided him the pills in the past that he had sold to me. RUCKS also admitted that he had possessed the firearms in his room despite the fact that he knew he was a convicted felon and was precluded from doing so.

22. Based upon the foregoing, I request that a Complaint and Arrest Warrant be issued for Julius RUCKS, charging him with manufacturing and distribution of a mixture and substance containing Fentanyl, a Schedule II Controlled Substance, in violation of Title 21 §§ U.S.C. 841(a)(1).

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

_____
Brian Nehring, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me on July 29, 2019,

_____
Hon. DEBORAH BARNES
United States Magistrate Judge

Approved as to form:

_____
CAMERON L. DESMOND
Assistant U.S. Attorney